```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JULIO FIGUEROA,
                                    Plaintiff,
          vs.                                              9:13-CV-048
                                                           (FJS/ATB)
MS. HOLMES, *et al.*,
                                    Defendants.
_____
```

JULIO FIGUEROA
Plaintiff, *pro se*

CHARLES J. QUACKENBUSH, AAG,
Attorney for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Frederick J. Scullin, Senior United States District Judge. In this *pro se* civil rights complaint (Dkt. No. 1), plaintiff alleges that, while he was an inmate in the custody of the Upstate Correctional Facility ("Upstate"), defendants denied him constitutionally adequate medical care and retaliated against him. He seeks substantial damages.

Presently before this court is defendants' motion to dismiss plaintiff's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 10).[1] Plaintiff has informed the court that he does not intend to respond in

---

[1] This motion was originally filed only by defendant Holmes. (Dkt. No. 10). However, following service, defendants Parmer and Smith each requested that they be added to the motion.

opposition to defendants' motion. (Dkt. Nos. 14, 22). For the following reasons, this court recommends that defendants' motion to dismiss be granted as to plaintiff's retaliation claim, and denied as to plaintiff's claim that he was denied adequate medical care.

I.  **Facts and Contentions**

While under the care of medical staff at Gowanda Correctional Facility, plaintiff was diagnosed with Paget's disease[2] and prescribed Tramadol. (Compl. at 4).[3] Plaintiff later came under the care of defendants Parmer and Holmes at Upstate, where his medication was discontinued in October 2010. (Compl. at 4). As a result, plaintiff filed a grievance against these defendants in November 2010 and appealed it to the Central Office Review Committee. (Compl. at 4-5). A specialist subsequently placed plaintiff on Indomethacin and "upped the original pain medication," however, defendants refused to issue the Ultram.[4] (Compl. at 5). Plaintiff further asserts that despite several requests, he has "been denied [his] pain medication for 27 months,"

---

(Dkt. Nos. 12, 20). The Court granted these motions. (Dkt. Nos. 13, 21).

[2] "Paget's disease is a disorder that involves abnormal bone destruction and regrowth, which results in deformity. . . . In people with Paget's disease, there is an abnormal breakdown of bone tissue, followed by abnormal bone formation. The new bone is bigger, but weaker and filled with new blood vessels. The disease may only be in one or two areas of the skeleton, or throughout the body. . . . Most patients have no symptoms. If they do occur, symptoms may include [b]one pain, joint pain or stiffness, and neck pain (the pain may be severe and present most of the time) . . . ." *See* http://www.nlm.nih.gov/medlineplus/ency/article/000414.htm (last visited September 20, 2013).

[3] The Court's references to page numbers are to the page numbers electronically generated by the CM/ECF system.

[4] Ultram is a brand name of tramadol hydrochloride. *See, e.g.,* http://www.pdr.net/drug-information/ultram?druglabelid=950 (last visited September 18, 2013).

and when he files sick call slips, they are ignored and the defendants simply advise him to "'drink more water.'" (Compl. at 5, 8).[5] According to plaintiff, Nurse Holmes told him she will not provide him pain medication because she believes that prisoners "are nothing but a bunch of drug addicts." (Compl. at 8).

Plaintiff alleges that he has suffered extreme pain as a result of these denials–"some days [he] feel[s] as if [he is] going to die in [his] cell," he "wake[s] up screaming for medical attention," and is losing weight because he is in too much pain to get out of bed and eat. (Compl. at 5-6). Plaintiff has written letters to Chief Medical Director Koenigsmann who advised him that defendant Smith would address his concerns. (Compl. at 5). He also wrote and spoke to "both defendant doctors mentioned in this complaint" and "in retaliation, defendant Holmes advised [him] that if [he] keep[s] writing '[he] will really need some medical attention along with some bandages!!'" (Compl. at 6).

## II. Motion to Dismiss

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]hreadbare recitals of the elements of a

---

[5] The Court notes that it is unclear from plaintiff's complaint what medications have been issued to plaintiff, and at what times. *Compare* Compl. at 5 (noting that he was issued 25 mg of Indocin twice a day) *with* Compl. at 5 (stating that he has been denied pain medication for 27 months and the doctors "only advise him to 'drink more water'"). However, at this stage in the proceeding, and given plaintiff's *pro se* status, the complaint must be liberally construed and interpreted to raise the strongest arguments they suggest. *See, e.g., Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006).

cause of action, supported by mere conclusory statements," do not suffice. *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat pro se pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

For the reasons discussed below, the court concludes that plaintiff has stated a plausible claim against the defendants for deliberate indifference to plaintiff's serious medical needs, and that defendants' motion to dismiss should be denied as to that claim. Additionally, the court concludes that plaintiff has not stated a plausible claim based on retaliation, and that defendants' motion to dismiss should be granted as to that claim.

### III. Denial of Medical Care

#### A. Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v.*

4

*Gamble*, 429 U.S. 97, 106 (1976). There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

### 1. Objective Element

In order to meet the objective requirement, the alleged deprivation of adequate medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining whether a deprivation is sufficiently serious also involves two inquiries. *Id.* The first question is whether the plaintiff was actually deprived of adequate medical care. *Id.* Prison officials who act "reasonably" in response to the inmates health risk will not be found liable under the Eighth Amendment because the official's duty is only to provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844–47).

The second part of the objective test asks whether the purported inadequacy in the medical care is "sufficiently serious." *Id.* at 280. The court must examine how the care was inadequate and what harm the inadequacy caused or will likely cause the plaintiff. *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32–33 (1993)). If the "unreasonable care" consists of a failure to provide *any* treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185–86 (2d Cir. 2003)). However, in cases where

the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.* If the issue is an unreasonable delay or interruption of ongoing treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185). The court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability. *Id.* at 280.

### 2. Subjective Element

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)). In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care. *Id.* (citing *Farmer*, 511 U.S. at 835–37). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839–40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). The defendant must be subjectively aware that his or her

6

conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844. The court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin* 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted). An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). Because plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle v. Gamble*, 429 U.S. at 107). Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id.; see also Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under § 1983.

## B. Application

Defendants assert that plaintiff did not establish a serious medical need, and that the complaint alleges nothing to suggest that any defendant was deliberately indifferent in treating plaintiff. However, under the liberal standards for construing a *pro se* complaint in the context of a motion to dismiss, plaintiff has alleged enough to state a facially plausible claim that defendants acted with deliberate indifference to plaintiff's serious medical needs.

The Second Circuit has set forth factors to consider when determining whether an alleged medical condition is sufficiently serious, including but not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance*, 143 F.3d at 702. Plaintiff has described the pain he experiences from Paget's disease, allegedly as a result of the denial of medication. More specifically, plaintiff claims that he "feel[s] as if [he is] going to die in [his] cell," "wake[s] up screaming for medical attention," cannot get out of bed to eat, is losing weight, and is in too much pain to leave his cell. (Compl. at 5-6). At this stage in the proceeding, plaintiff has set forth enough facts to plausibly suggest that the deprivation in medical care was sufficiently serious.

As noted above, the complaint is not a model of clarity or consistency with respect to the medications plaintiff has been given. However, it can be construed to allege that, notwithstanding plaintiff's extreme pain and requests for treatment, the

defendants refused to provide him with adequate medications or other treatment for the pain. Plaintiff further asserts that defendants were aware of his pain and took no action in response to his complaints. In the absence of additional facts, it is not clear why plaintiff's medications were changed, or whether the defendants disregarded an excessive risk that would support a facially plausible claim for "deliberate indifference" sufficient to defeat a motion to dismiss. While the defendants may be able to marshal facts in a summary judgment motion to undermine plaintiff's claim that defendants acted with deliberate indifference in discontinuing plaintiff's medications and/or not providing adequate treatment, the complaint, liberally construed, states a facially plausible Eighth Amendment cause of action against the defendants.

## IV. Retaliation

### A. Legal Standards

In order to establish a viable claim of retaliation under the First Amendment, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for "adverse action" taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). The plaintiff must establish a causal connection between the protected conduct or speech and the adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004). The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d at 381 (citations

9

omitted). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *Id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, plaintiff must set forth non-conclusory allegations. *Id.* Even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Id.* (citing, *inter alia*, *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)).

**B.  Application**

Plaintiff asserts, in conclusory fashion, that defendants retaliated against him. Defendants respond that plaintiff has not alleged a protected activity and that defendant Holmes did not take an adverse action against plaintiff. The complaint contains only three vague references to retaliation.

First, plaintiff alleges that defendant Holmes retaliated against him for speaking to "both defendant doctors mentioned in this complaint" by telling him that if he kept writing he would need "medical attention along with some bandages." (Compl. at 6). Here, plaintiff alleges only that defendant Holmes engaged in a verbal threat, therefore, he has not asserted an adverse action sufficient to support a retaliation claim. *See Taylor v. Conway*, 381 F. App'x 40, 41 (2d Cir. 2010) (noting that inmate could not sustain retaliation claim because verbal harassment is not actionable under Section 1983), *cert. denied*, __ U.S. ___, 131 S. Ct. 1701 (2011); *Johnson v. Brown*,

No. 09 Civ. 2, 2011 WL 1097864, at *6 (N.D.N.Y. Mar. 22, 2011) (defendant's threat of planting contraband in plaintiff's cell, which never came to fruition, was insufficient to establish adverse action for purposes of retaliation claim) (citing *Bartley v. Collins*, No. 95 Civ. 10161, 2006 WL 1289256, at *6 (S.D.N.Y. May 10, 2006) (finding, in retaliation cases, that "verbal threats such as 'we going to get you, you better drop the suit,' do not rise to the level of adverse action")).

Plaintiff next asserts that he saw a specialist who prescribed medications, and "in retaliation" plaintiff was taken off one medication, and the dosage for the other was cut in half. (Compl. at 7). Here there is no allegation of any "protected activity" that could have caused defendants retaliation. Plaintiff mentions only a visit with a specialist, which clearly is not constitutionally protected speech or conduct.

The final reference to retaliation in the complaint is in the "Causes of Action" section where plaintiff states, in conclusory fashion that "all defendant[s] retaliated against me for filing grievances and contacting DOCCS Chief Medical Officer in Central Office." (Compl. at 10). Here plaintiff does not specifically assert how defendants retaliated against him; however, the overarching allegation of retaliation in the complaint appears to be that defendants were influenced in denying plaintiff medical treatment by his grievance and complaints to others. This allegation is appropriately considered within the ambit of the explicit Eighth Amendment medical claim. Moreover, it is unsupported by any specific factual allegations.

It is well-settled that filing a grievance is constitutionally protected conduct, *Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001); *Graham v. R.J.*

11

*Henderson*, 89 F.3d 75, 80 (2d Cir. 1996), however, plaintiff cannot meet the remaining elements of a retaliation claim. There is no stated temporal or other connection between the complaints and the denial of medication. Indeed, plaintiff specifically asserts that he filed a grievance because the medication prescribed at Gowanda Correctional Facility was discontinued. The adverse action alleged (denying plaintiff his medication) occurred, at least in part, before the alleged protected conduct. Therefore, the initial denial of the medication could not have been in retaliation for the exercise of plaintiff's constitutional right to file a grievance. The complaint does not indicate any other connection between the denial of medication and his complaints. The complaint contains no factual allegations that would support the apparent conclusion that defendants harbored a retaliatory motive because plaintiff filed a grievance and contacted Chief Koenigsmann.

Plaintiff's conclusory allegations of retaliation fail to state a plausible claim and should be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 10) be **GRANTED** as to plaintiff's claims based on retaliation, and it is further

**RECOMMENDED**, that defendants' motion to dismiss (Dkt. No. 10) be **DENIED** as to plaintiff's claim based on deliberate indifference to serious medical needs.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 20, 2013

**Andrew T. Baxter**
**U.S. Magistrate Judge**